UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN QUALEY, JR.,

                Plaintiff,                No. 07-CV-10910-DT

vs.                                            Hon. Gerald E. Rosen

ROGER A. JACKSON, et al.,

                Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     June 25, 2007

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

## I. INTRODUCTION

Plaintiff John Qualey, Jr., filed this purported class action against Lear Corporation ("Lear"), its Board of Directors, its Employee Benefits Committee, American Real Estate Partners, L.P. ("AREP"), and Carl Icahn, Chairman of the Board of AREP's general partner, American Property Investors, Inc. ("API"). Qualey is an employee of Lear Corporation and a participant of one of Lear's three employee benefit plans (the "Plans"). Qualey's lawsuit was precipitated by a February 9, 2007 Merger Agreement entered into between Lear and two wholly-owned subsidiaries of AREP, AREP Car Holdings Corp.

1

and AREP Car Acquisition Corp. (the "AREP Affiliates"). Plaintiff claims that the Lear Defendants violated ERISA by approving the Merger Agreement and the sale of the Plan's holdings of Lear Stock to Defendant AREP. No sale, however, has yet occurred and none will occur until the Lear Shareholders vote on, and approve, the merger.[1]

This matter is presently before the Court on Plaintiff's Motion for a Preliminary Injunction.[2] Defendants have responded and Plaintiff has replied. Having reviewed and considered the parties' briefs and the entire record of this matter, the Court has concluded that oral argument on this Motion is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

---

[1] The annual shareholders' meeting is scheduled for June 27, 2007. It was anticipated that the merger would be presented for approval by the shareholders at that meeting. However, on June 15, 2007, the Delaware Court of Chancery entered a preliminary injunction preventing the merger vote until Lear makes certain additional disclosures concerning its CEO Robert Rossiter, who conducted the merger negotiations. Lear was to provide the Delaware court with the supplemental disclosures and its proposal as to the timing of its provisions to stockholders on June 18 and if the court is satisfied, the merger vote may be able to proceed as scheduled. This Court, however, is unaware of the current status of the Delaware court's consideration of the matter.

[2] Although the Court also has pending before it Defendants' Motions to Dismiss, in light of the possibility that the shareholders' vote on the merger will go forward on June 27, it has determined that resolution of the motion for preliminary injunction is of paramount importance at this time.

## II. PERTINENT FACTS

A.  THE MERGER AGREEMENT

Lear Corporation is a leading global supplier of automobile parts. On February 9, 2007, Lear entered into an Agreement and Plan of Merger (the "Merger Agreement") with AREP Car Holdings Corp. and AREP Car Acquisition Corp. for the sale of all issued and outstanding shares of Lear at $36 per share. Lear publicly announced the Merger Agreement that same day. The Merger, however, has not yet been consummated. Lear's shareholders must vote to adopt the Merger Agreement as a condition to closing. As noted above, the stockholder meeting to vote on the Merger Agreement was scheduled for June 27, 2007, but whether the vote will take place as scheduled must await the final decision of the Delaware Court of Chancery, which in turn is awaiting disclosure of certain court-ordered supplemental information. Once the vote takes place, if the requisite number of votes approving the Merger is not obtained, the Merger will not take place and no shares of Lear stock will be sold or transferred to AREP.

B.  LEAR'S RETIREMENT PLANS

As indicated, Lear sponsors three separate employee benefit plans: the Salaried Employees Retirement Savings Plan, the Hourly Employees Retirement Savings Plan and the Hourly Employees 401(k) Savings Plan. These Plans are all eligible individual account plans ("EIAPs") under ERISA. Plan participants are given the option of investing their contributions and Lear's matching contributions in one of several investment options. The Lear Corporation Stock Fund, which is comprised of Lear stock

3

and cash, is one of the investment options available to participants in each of the Plans. Collectively, the Plans hold approximately 1.5 million shares of Lear common stock.[3] In any vote by Lear stockholders on the Merger Agreement, Plan participants will be able to vote the Lear stock held in the Plans on their behalf due to the pass-through voting provisions contained in the Plans. *See* Lear Defendants' Ex. 2 § 7.4; Ex. 3 § 7.4; Ex. 4 § 7.02(a)(iii).

C.     PLAN ADMINISTRATION

The Employee Benefits Committee (the "Committee") is the "Plan Administrator" of each of the Plans for purposes of § 3(16) of ERISA. 29 U.S.C. § 1002(16). The Committee, which is appointed by the Lear Board of Directors, is responsible for the "administration, operation and interpretation" of the Plan. *See* Lear Defendants' Exs. 2 and 3, §§ 10.1-10.3; Ex. 4 § 9.01 The Company, the Committee and the Plan Trustee are each expressly designated as a Plan "Fiduciary" with respect to the Hourly and Salaried Retirement Savings Plans, but only with respect to the specific responsibilities of each of Plan and Trust Fund administration. *See* Exs. 2 and 3, § 10.6.[4] The "Company," as defined in the Plan documents does not include the Board of Directors. *See id.*, §§ 1.9

---

[3] Lear has 76,642,783 shares of common stock outstanding. Prelim. Proxy Statement, pp. 1 and 108. The Plans' holdings amount to approximately 2% of those shares.

[4] The Committee and "any Plan Participant or beneficiary who makes an investment election or otherwise exercises control permitted under the Plan over assets in the account" are designated as fiduciaries with respect to the 401(k) Plan. Ex. 4, §§ 8.07, 9.01.

and 1.11.  The only role of the Board of Directors with respect to Plan administration and day-to-day operation is the selection of the members of the Committee.  *Id.* § 10.1.  In addition, the Company approves the powers of the Trustee to control and disburse funds, *id.* § 11.2, and appoints an accountant to prepare the Plans' financial statements.  *Id.* §§ 10.5, 11.2.  Plaintiffs do not dispute that neither the Committee nor the Trustee played any role in determining the terms of the Merger Agreement and nor will they play any role in effecting the merger.

Each of the Plans expressly state that the Plan Participants themselves direct the voting of shares held in their accounts.  Thus, ". . . all voting shares held by the Trustee for Participants shall be 'Employee Voting Shares' and shall be voted by the Trustee as directed by the Participants."  *Id.* § 7.4.  *See also* Ex. 4 § 7.02(iii) (shares invested by the 401(k) Plan participants in the Lear Common Stock Fund are voted by the Trustee "as instructed by the Participant.")

D. THE AREP DEFENDANTS

AREP Car Holdings and AREP Car Acquisition, the two "AREP Affiliates" that are parties to the Merger Agreement with Lear, own no Lear stock.  The AREP Affiliates are subsidiaries of American Real Estate Partners, L.P. ("AREP"), a Delaware limited partnership.  American Property Investors, Inc. ("API"), a Delaware corporation, is the general partner of AREP.  Carl Icahn is the owner and Chairman of the Board of API.  Icahn also owns approximately 90% of the depository and 86.5% of the preferred units of AREP.  He also is the owner of approximately 16% of Lear's outstanding stock.  Vincent

Intrieri is a member of Lear's Board of Directors. He is also a director of AREP and an employee, officer or director of other entities not affiliated with AREP that are also owned and controlled by Carl Icahn. Intrieri did not participate in the Lear Board of Directors vote on the Merger. Rather, he recused himself from Board discussion and all Board action concerning the Merger.[5]

## III. DISCUSSION

In his Complaint, Plaintiff John Qualey, Jr. alleges two claims: In Count I, Qualey asserts a claim against all of the Defendants seeking to prevent the Plans' sale of Lear stock on the grounds that it constitutes a transaction prohibited under Section 406 of ERISA, 29 U.S.C. § 1106, which prohibits certain transactions between an ERISA plan and a "party-in-interest." In Count II, Qualey alleges a claim against the Lear Defendants, only, for breach of fiduciary duties under ERISA Sections 404 and 405, 29 U.S.C. §§ 1104, 1105.

A.  STANDARDS FOR PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Further, "[t]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than

---

[5] Intrieri is not a member of the Employee Benefits Committee, nor is he alleged to be one.

the proof required to survive a summary judgment motion." *Id.*[6]

In deciding whether a plaintiff is entitled to a preliminary injunction, the court is to consider four factors:

(1) whether the plaintiff has a strong likelihood of success on the merits;

(2) whether he would suffer irreparable harm if preliminary relief is not issued;

(3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

(4) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). The four considerations applicable to preliminary injunctions are factors to be balanced and are not prerequisites that must be satisfied. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id*. Moreover, the court is not required to make specific findings concerning each of the four factors if fewer factors are dispositive. *Jones*, *supra*.

---

[6] Whereas on a motion for summary judgment a plaintiff need only create a jury issue, "[t]o obtain a preliminary injunction he not only ha[s] to demonstrate specific harm, but also carry the *burden of persuasion*, showing a likelihood of success on the merits." *Leary v. Daeschner, supra*, (quoting *National Wildlife Fed'n v. Burford*, 878 F.2d 422, 432 (D.C. Cir. 1989), *rev'd on other grounds sub nom, Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990)).

1.  **PLAINTIFF HAS NOT DEMONSTRATED A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS**

For the first factor to favor the granting of an injunction, "a plaintiff must demonstrate a strong or substantial likelihood or probability of success." *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 35 (6th Cir.1992). A mere likelihood of success is not sufficient to meet this standard; the plaintiff must demonstrate that the likelihood is "strong or substantial." *Raymond James & Associates, Inc. v. Leonard & Co.*, 411 F. Supp. 2d 689, 693 (E.D. Mich. 2006) (citing *United of Omaha Life, supra*). The Court finds that Plaintiff here has not met this standard.

Plaintiff's Count I claim is predicated upon his contention that the Defendants violated ERISA § 406, 29 U.S.C. § 1106. This section provides in pertinent part,

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect --
>
> > (A) sale or exchange. . . of any property between the plan and a party in interest. . . .

29 U.S.C. § 1106(a)(1)(A).

First, Plaintiff has not demonstrated that the Lear Director Defendants were acting as ERISA fiduciaries when they approved the Merger with the AREP Affiliates. Directors are not fiduciaries with respect to ERISA merely because of the positions they hold. *Riley v. Murdock*, 890 F. Supp. 444 (E.D.N.C. 1995). A person is a fiduciary under ERISA to the extent

> (I) he exercises any discretionary authority or discretionary control

> respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Supreme Court has recognized that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan. . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063 (1993). The Sixth Circuit also has emphasized the need to examine the conduct at issue when determining whether an individual is an ERISA fiduciary:

> The fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity. Thus, we must examine the conduct at issue to determine whether it constitutes "management" or "administration" of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards.

*Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (quoting *Hunter v. Caliber Sys.*, Inc., 220 F.3d 702, 718 (6th Cir. 2000). Thus, courts recognize that a person is deemed to be a fiduciary only to the extent that he performs one of the described "plan management" or "plan administration" functions. *See Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir.1994). A clear distinction is drawn under ERISA between actions that constitute "managing" or "administering" a plan and actions that constitute "business decisions" that merely have an effect on an ERISA plan. *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998). The former are deemed fiduciary acts subject to

9

ERISA, while the latter are not, regardless of whether those business decisions have an effect on the benefits at issue. *Id. See also Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir.1995) ("ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants. . . . [O]nly discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties.").

In this case, the claims against the Lear Defendants are predicated on the Lear Directors' approval of the Merger Agreement. Approval of the Merger Agreement had nothing to do with administering the Plans or investing Plan assets. This was a business decision that is not subject to ERISA. *See United Steel Workers of America v. Cyclops Corp.*, 860 F.2d 189, 203 n. 15 (6th Cir. 1988) ("in general, an employer's fiduciary duties do not extend to negotiations of the sale of a going concern.") *See also Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir.1988) ( " 'ERISA . . . envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.' ") (*quoting Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986)); *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir.1987), *cert. denied*, 485 U.S. 1022 (1988); *Amato v. Western Union Int'l*, 773 F.2d 1402, 1416-17 (2nd Cir.1985) (ERISA employers may wear two hats and assume fiduciary status only when functioning in their capacity as plan administrators, not when

conducting business), *cert. dismissed*, 474 U.S. 1113 (1986); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 567 F.Supp. 1184 (N.D.W.Va.), *aff'd*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1205 (1984) (same).

Since the Lear Defendants were not acting in any ERISA fiduciary capacity in approving the Merger Agreement, Section 406 simply does not apply to them. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (dismissing § 406 claim where defendant was not a fiduciary with respect to the challenged transaction). Therefore, Plaintiff cannot demonstrate a strong likelihood of success on the merits of his claim in Count I of his Complaint.[7]

But, even if the Lear Defendants were deemed to be ERISA fiduciaries for purposes of the sale of Plan assets to the AREP Affiliates, Section 406 still would not apply to them because they have not *caused* the Plans to engage in a prohibited transaction. ERISA § 406 is expressly limited to cases in which a fiduciary "causes" the plan "to engage in a [prohibited] transaction." If the defendant-fiduciary does not "cause" the plan "to engage in" a prohibited transaction, there is no claim under ERISA § 406. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) ("a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction").

Here, the Lear Defendants have not "caused" the Plans to engage in a prohibited transaction. The only action that has been taken is the approval of the Merger Agreement

---

[7] These same reasons also establish that Plaintiff cannot demonstrate a strong likelihood of success on the merits on his breach of fiduciary duty claim in Count II.

11

by the Director Defendants. No "sale or exchange" of stock held by the Plans will occur unless and until a majority of Lear shareholders -- including the Plan participants -- cause it to happen by voting in favor of the merger. If the shareholders do not approve the merger, it will not occur. If they do approve the merger, it will be the shareholders, not the Defendants, who will "cause" the conversion of all shares to $36 per share.

Furthermore, Plaintiff has not demonstrated a strong likelihood of success in establishing that the AREP Affiliates that will be purchasing the Lear stock if the shareholders do approve the merger are "parties in interest" under ERISA § 406.

As indicated, the AREP Affiliates are subsidiaries of American Real Estate Partners, L.P. ("AREP"), a Delaware limited partnership. American Property Investors, Inc. ("API"), a Delaware corporation, is the general partner of AREP. Carl Icahn is the owner and Chairman of th Board of API. Icahn also owns approximately 90% of the depository and 86.5% of the preferred units of AREP. He also is the owner of approximately 16% of Lear's outstanding stock. Plaintiff claims that the AREP Affiliates are "parties in interest" because they are affiliates of a limited partnership (AREP) whose general partner (API) is controlled by an individual who owns more than 10% of Lear's common stock.

ERISA § 3(14), 29 U.S.C. § 1002(14), states that a partnership may be considered a party in interest if 50% or more of its capital interest or profits interest is "owned directly or indirectly, or held by a person" who is a direct or indirect owner of 50 % or more of the ERISA employer's stock. 29 U.S.C. § 1002(14)(G), (E). The AREP

12

Affiliates do not qualify as parties in interest under this definition. Although it is not disputed that Carl Icahn owns more than 50% of AREP, he does *not* own 50% or more of Lear's common stock.

ERISA § 3(14) also states that an entity may be considered a party in interest if it is a "10 percent or more shareholder directly or indirectly" of the ERISA employer. 29 U.S.C. § 1002(13)(H), (C). The AREP Affiliates are not parties in interest under this definition, either. Plaintiff does not allege that the AREP Affiliates own any Lear stock. Nor does Plaintiff allege that entities controlled by the AREP Affiliates, e.g., subsidiaries, own any Lear stock. Therefore, the AREP Affiliates are not parties in interest under this definition.

Plaintiff, however, claims that the AREP Affiliates are parties in interest under this definition because Carl Icahn owns more than 10% of Lear stock and Icahn controls API and AREP. However, this "alter ego" theory -- that an entity is a party in interest if it is controlled by someone who would be a party in interest under the statute -- has been squarely rejected. In *Reich v. Compton*, 57 F.3d 270 (3rd Cir. 1995), the court (in an opinion authored by now Justice Alito) held that a "corporation wholly controlled" by a party in interest was not itself a party in interest for purposes of ERISA § 406. The court determined that the definition of party in interest under Section 406 should be strictly construed, noting that had it wanted to, Congress could easily have provided that an alter ego/shell corporation of a party in interest is also a party in interest, but did not do so. *Id.* at 277. Permitting a plaintiff to use an alter ego theory to expand the entities considered

as parties in interest would "upset the carefully crafted and detailed legislative scheme Congress created." *Id.* at 274. *See also Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000) (finding that "ERISA must be strictly construed" and that "the transactions prohibited by ERISA § 406 cannot be interpreted broadly").

Plaintiff also argues that the AREP Affiliates are parties in interest because AREP is "controlled" by Defendant Vincent Intrieri, who is also on Lear's Board of Directors. Putting aside for the moment the fact that Plaintiff's claim that Intrieri controls AREP is contradicted by his claim that Carl Icahn owns and controls AREP, ERISA § 3(14) identifies parties in interest in terms of who owns the entity in question, what percentage that person owna, and what that person's relationship with the employer is. Plaintiff has made no allegations regarding Intrieri's ownership of Lear stock or interest in the AREP Affiliates. The Court simply cannot consider the AREP Affiliates to be parties in interest based on Plaintiff's conclusory assertion that AREP is controlled by Intrieri.

For all of the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate a strong likelihood of success on the merits of his claims. A finding that there is no likelihood of success on the merits "is usually fatal" to a movant's preliminary injunction motion. *Raymond James & Associates, Inc. v. Leonard & Company*, 411 F. Supp.2d 689, 693 (E.D. Mich. 2006), (citing *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)). Nonetheless, the Court will proceed to examine the other preliminary injunction factors.

2.  PLAINTIFF HAS FAILED TO DEMONSTRATE IRREPARABLE HARM

It is well-settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Taubman v. Webfeats*, 319 F.3d 770, 777 (6th Cir. 2003); *see also Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Such "harm" includes alleged losses in value of stock. *See e.g., Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 285 (E.D. Mich. 1992) (holding that "losses due to depressed stock prices . . . are compensable . . . monetary losses [that] do not constitute irreparable harm.").

In this case, Plaintiff himself seems to acknowledge that his losses are compensable by money damages as the remedy he seeks in his "Prayer for Relief" in his Complaint is "[a]n Order enjoining the sale of any stock held by the Plans, ***or in the alternative, an increase in the amount being offered for Company stock***." [Complaint, Prayer for Relief, ¶ B.]

Because Plaintiff can be fully compensated by money damages, he has failed to demonstrate such irreparable harm that would entitle him to a preliminary injunction.

3.  HARM TO THIRD PARTIES

The third factor, whether issuance of the requested preliminary injunction would cause harm to others, also weighs against its issuance. Harm to others includes harm to the defendant. *Chrysler Corp. v. Franklin Mint Corp.*, 1994 WL 378144, *2 (6th cir. 1994). Here Plaintiff, one individual Plan participant, wants the Court to take action that could harm all Lear stockholders and Plan participants -- by denying them the right to vote on whether they want the merger to occur and the right to receive $36 per share of

stock they hold.[8]  Although Plaintiff suggests that the Lear Defendants would suffer no harm because they "could still proceed with the Buy Out and acquire Lear's outstanding stock except for the Plans' 1.5 million shares," this ignores the fact that the Merger Agreement requires that "*each* share" and "*all* shares" of Lear stock be cancelled prior to the merger and that those stocks "shall cease to exist."  Plaintiff's assertion that 1.5 million shares could be held back from the merger, thus, is a fiction.

---

[8] Although Plaintiff personally deems the amount to be inadequate, the Court notes that the Delaware Court of Chancery found $36 per share to be reasonable.

4. <u>A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST</u>

Finally, the Court finds that the public interest would not be served by the issuance of a preliminary injunction in this case. An injunction here could impede future mergers and the efficient functioning of capital markets. Moreover, the public interest favors corporations' abilities to make business decisions that have nothing to do with the management or administration of plan assets unhindered by ERISA's restrictions. The cases Plaintiff relies upon are inapposite. None of those cases involve a situation in which the plaintiffs sought to use ERISA to preliminarily enjoin a merger.

IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that Plaintiff has failed to establish the circumstances here warrant the issuance of a preliminary injunction. Therefore,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

<u>s/Gerald E. Rosen</u>
Gerald E. Rosen
United States District Judge

Dated: June 25, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 25, 2007, by electronic and/or ordinary mail.

<u>s/LaShawn R. Saulsberry</u>
Case Manager